Dear Senator Gannon:
This opinion is being issued in response to your question, stated as follows:
 "Which of the following takes precedence in this matter: an annexation election which extended the city limits and would thereby extend the school district boundaries the next July 1; or prior to the July 1 date, a change in the status of the county from second class to first class? Such automatic extensions of school district boundaries are excepted in first class counties."
You have provided the following factual situation in relation to your request:
 "On August 8, 1978 the voters in the City of Crystal City, which comprises the major portion of Crystal City School District #47, voted to annex an area south of the city. At that time Jefferson County was a second class county. Therefore, according to section 162.421 the boundaries of the Crystal City School District #47 would be automatically extended ---- `effective on the first day of July next following the extension of the limits of the city. . . . . . .'
 "In January 1979 Jefferson County attained first class status. Automatic extensions of the school district boundaries do not apply in first class counties. Therefore, the question is one of whether the effect of the annexation election continues as scheduled or is superseded by the change in county status."
Section 162.421, V.A.M.S., provides:
 "1. Except districts containing a city or a part of a city having more than seventy-five thousand inhabitants and districts in counties of the first class, the extension of the limits of any city or town beyond the boundaries of a six-director school district in which it is included shall automatically extend the boundaries of that district to the same extent, effective on the first day of July next following the extension of the limits of the city or town, and except in counties of the second class if the extension of the limits of the city or town includes territory contained in another six-director school district which maintains a high school, then the school district boundary lines shall not be enlarged to include territory in said six-director district by reason of the extension of the city or town limits.
 "2. Whenever, by reason of the extension of the limits of any city or town, a portion of the territory of any school district adjacent thereto is incorporated in a six-director district, the inhabitants of the remaining parts of the district have the right to be annexed to the six-director district. When such part of a school district desires to be so annexed, the question shall be submitted as provided in section 162.441, and if a majority of the votes cast favor annexation, the secretary shall certify the fact, with a copy of the record, to the board of the district and to the board of the six-director school district; whereupon the board of the six-director district shall meet and confirm the annexation by a proper resolution of record. When such part of a school district has no organization, any ten voters may call a meeting of the district and proceed as provided in section 162.441; and the secretary of the meeting shall certify, if the majority votes for annexation, to the board of directors of the six-director district, and the same action shall be taken as provided above."
We have also been advised that the area annexed by Crystal City is located in both the Jefferson R-7 School District and the Festus School District. The latter is a six-director district which maintains a high school; the former is not. We understand that if the annexation is considered effective to extend the boundaries of the Crystal City School District, such extension would only include that territory formerly belonging to the Jefferson R-7 School District.
Although we have found no cases interpreting § 162.421 with respect to the issue you have raised, it appears that the language of that statute and also the language of § 162.031 provides guidance in determining whether the legislature intended that a change in county classification before the effective date of the extension of school district boundaries should nullify the extension.
We note first that the language of § 162.421(1) is framed to cause an "automatic" extension of school district boundary lines upon the extension of city limits. In this context, the word automatic means that no further action is needed to effect the change in school district boundary lines, and that the change in the boundary lines is considered to have taken place as of the date of the extension of the city limits, although the change is not "effective" until the following July. The only conditions under which the statute will not operate to cause the automatic change are where the district contains a city or part of a city having more than 75,000 inhabitants or where the district is located in a county of the first class. Thus it appears that if these two conditions or exceptions are not applicable at the time the city limits are extended, the simultaneous extension of school district boundary lines is accomplished. The purpose of delaying the effective date of the change in the school district boundary lines to the following July appears to be a method for avoiding mid-year school changes for pupils and a method for providing an adequate time for orderly transition, rather than a time during which the original conditions must continue to be met.
That the change in school district boundary lines should be considered to have conclusively occurred on the date of the extension of the city limits is supported by § 162.031, RSMo 1969. That statute provides, in pertinent part:
 "1. Whenever . . . (2) the boundary lines of any district are changed by the changing of the boundary lines of any city, incorporated town, or school district, . . . the board of the school district from which land has been taken and the school board of the district to which land has been annexed, or which has been newly created, shall make a just and proper adjustment and apportionment of all school property, real and personal, including moneys and a like apportionment of indebtedness, if any, to and among the school districts. The adjustment and apportionment shall be made as of the date of the vote of the electors effecting the annexation, change of boundaries, or creation." (Emphasis supplied)
Thus, the apportionment of property and indebtedness is to be determined as of the date of the vote to extend the city limits in this case, and not as of the next July when the change of school district boundary lines becomes effective, since the latter date is not the occasion for any vote.
It appears, therefore, that if at the time of the extension of the city limits Crystal City was not located in a first class county, the automatic extension of the school district boundary lines is effected, and the fact that Crystal City has become located in a first class county prior to the effective date of the change does not prevent the change from taking place.
CONCLUSION
It is the opinion of this office that the extension of city limits in a second class county automatically extends the school district boundary lines of such city, regardless of the fact that the county becomes a first class county prior to the effective date of the extension.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Sheila K. Hyatt.
Yours very truly,
 JOHN ASHCROFT Attorney General